IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PHILLIP D. HALLFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 07-0401-WS-C |
| | ) |
| RICHARD ALLEN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This § 1983 method-of-execution case comes before the Court on Defendants' Motion to Dismiss (doc. 15). The Motion has been fully briefed and is ripe for disposition.

**I.      Background.**

On March 4, 1987, an Alabama jury found Phillip D. Hallford guilty of the capital offense of murder committed during a robbery in the first degree, in violation of Alabama Code § 13A-5-40(a)(2).[1]  *Hallford v. State*, 548 So.2d 526, 529 (Ala.Crim.App. 1988). Upon a jury recommendation, by a 10-2 vote, that Hallford receive the death penalty, the trial court sentenced Hallford to death on April 16, 1987. *Id.*  The Alabama Court of Criminal Appeals and Alabama Supreme Court affirmed Hallford's conviction and sentence on direct appeal, and the United States Supreme Court denied *certiorari* in 1989. Hallford then initiated proceedings for state post-conviction relief under Rule 32, Ala.R.Crim.P. The trial court denied relief, which decision was affirmed by the Alabama Court of Criminal Appeals in 1992. The U.S. Supreme Court denied *certiorari* as to the Rule 32 petition in 1994.

On November 1, 1995, Hallford filed a petition for federal habeas corpus relief in the U.S. District Court for the Middle District of Alabama, pursuant to 28 U.S.C. § 2254. More than nine years later, on December 15, 2004, the district court denied that petition. *Hallford v.*

---

[1] The underlying events on which this conviction was predicated occurred on April 13, 1986, when Hallford shot his daughter's boyfriend, 16-year old Charles Eddie Shannon, in the head three times after having his daughter lure the victim to a remote location. Hallford took the victim's wallet, and dumped his body off a bridge and into a river. *Hallford v. State*, 629 So.2d 6, 7-8 (Ala.Crim.App. 1992).

*Culliver*, 379 F. Supp.2d 1232 (M.D. Ala. 2004).  The Eleventh Circuit Court of Appeals affirmed on August 11, 2006.  *Hallford v. Culliver*, 459 F.3d 1193 (11th Cir. 2006).  Hallford's subsequent request for rehearing and rehearing *en banc* was denied on November 1, 2006.  *Hallford v. Culliver*, 2006 WL 3422172 (11th Cir. Nov. 1, 2006).  Hallford filed a petition for writ of *certiorari* with the U.S. Supreme Court in his § 2254 action on March 1, 2007.[2]  To date, the Supreme Court has not ruled on Hallford's *certiorari* petition; however, briefing was concluded on May 21, 2007, and the case was distributed for the conference of September 24, 2007.  In light of these circumstances, it is reasonable to expect that the Supreme Court will rule on Hallford's petition for writ of *certiorari* in the § 2254 proceedings shortly after its 2007-08 term commences next month.

On June 1, 2007, some 11 days after the conclusion of briefing on his petition for writ of *certiorari* in the federal habeas action, Hallford filed a Complaint (doc. 1) initiating the instant civil rights action against Richard Allen, the Commission of the Alabama Department of Corrections, and Grantt Culliver, the Warden of Holman Correctional Facility.[3]  The Complaint alleges a cause of action under 42 U.S.C. § 1983, based on Hallford's contention that the State of Alabama's execution protocols violate his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments.  In particular, Hallford maintains that Alabama's "current lethal injection procedures violate[] society's standards of decency, threaten to inflict unnecessary and wanton pain upon Mr. Hallford by causing him to experience the sensation of suffocation and excruciating pain from the potassium chloride activating nerve endings in Mr.

---

[2]    Rule 13 of the Rules of the Supreme Court of the United States provides that petitions for writ of *certiorari* are timely if filed within 90 days after entry of judgment.  Given that the Eleventh Circuit had denied his request for rehearing and rehearing *en banc* on November 1, 2006, Hallford's 90-day period for petitioning the Supreme Court would have expired on January 30, 2007.  However, the Supreme Court's docket sheet reflects that Hallford applied for a 30-day extension of time in which to file his petition, which application was granted by Justice Thomas.  *Hallford v. Culliver*, Case No. 06-9895 (S.Ct.).  Hallford filed his petition for writ of *certiorari* on the last possible day of that extended period.

[3]    According to the Complaint, this filing occurred nine days after Hallford's counsel sent a letter to defendant Allen requesting copies of written protocols and information regarding procedures for carrying out executions in Alabama.  (Complaint, ¶ 8.)  Hallford filed suit without awaiting response from Allen.  (*Id.*)

Hallford's veins, and thus violate the Eighth Amendment." (Complaint, ¶ 23.) The Complaint references the three-drug "cocktail" utilized by Alabama in performing lethal injections, including (in sequence) Thiopental, a short-acting anesthetic; Pavulon, which induces paralysis of voluntary muscles; and potassium chloride, which stops the heart. (*Id.*, ¶¶ 10-13.)[4] The focal point of the Complaint is Hallford's contention that Thiopental may fail to establish a sufficient plane of anesthesia, such that the condemned inmate may be conscious and physically paralyzed as an excruciatingly painful lethal drug courses through his veins. (*Id.*, ¶¶ 10-14.) According to Hallford, the use of Pavulon "precludes an accurate assessment of anesthetization by paralyzing all of the muscles that would otherwise move when in excruciating pain," such that "sufficient anesthetization of the prisoner cannot be reliably determined and, if necessary, adjusted." (*Id.*, ¶ 14.)[5] Based on these contentions, Hallford's Complaint asserts that Alabama's lethal injection procedures violate his right to be free from cruel and unusual punishment. The Complaint requests an injunction to prevent defendants from executing Hallford with inadequate anesthesia and unconstitutional execution procedures, and also seeks a declaration that Alabama's lethal injection protocols violate the Eighth Amendment.

Hallford perfected service of process on defendants on July 2, 2007. Three weeks later, on July 23, 2007, defendants filed a Motion to Dismiss (doc. 15) in which they contend that the Complaint is barred by the applicable statute of limitations, is barred by the doctrine of laches,

---

[4] Effective July 1, 2002, the State of Alabama changed its primary method of execution from electrocution to lethal injection and gave existing death row inmates a one-time opportunity within 30 days from that date to elect electrocution instead. *See* Ala. Code § 15-18-82.1. Hallford made no such election at that time; therefore, unless he receives relief from his sentence, Hallford is facing death by lethal injection.

[5] Hallford's Complaint augments his concerns about the three-drug cocktail by asserting that Alabama's lethal injection procedures "lack medically necessary safeguards" to ensure sufficient anesthetization; that those protocols "fail to ensure adequately that the [executioners] are credentialed, licensed, and proficient in the knowledge, skills and procedures necessary to establish an appropriate plane of anesthesia"; and those protocols therefore create a greatly enhanced risk "of not receiving the necessary amount of Thiopental prior to the administration fo the paralyzing agent." (*Id.*, ¶¶ 17-19.) Each of these allegations is closely linked to Hallford's principal theory for relief, which is that the anesthesia used in Alabama's lethal injection protocol will not produce a sufficiently deep plane of anesthesia to prevent Hallford from being conscious and suffering pain as he is put to death.

and fails to state a claim for relief under the standard enunciated in *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65 (explaining that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level" to withstand Rule 12(b)(6) challenge).[6]

## II.     Analysis.

### A.     The Developing Eleventh Circuit Caselaw.

On two separate occasions in the last two months, the Eleventh Circuit has affirmed the dismissal on timeliness grounds of Eighth Amendment method-of-execution challenges brought by Alabama death-row inmates.

In *Grayson v. Allen*, 491 F.3d 1318 (11th Cir. 2007), the plaintiff filed a § 1983 action in November 2006, four years after Alabama adopted lethal injection as its primary method of capital punishment and four years after the Supreme Court denied his petition for *certiorari* in his federal habeas proceedings.  In affirming the district court's dismissal of the § 1983 lethal injection claim on laches grounds, the *Grayson* court began with the proposition that injunctive relief is an equitable remedy that is not available as a matter of right, and that federal courts have routinely invoked their equitable powers to dismiss § 1983 actions for injunctive relief as speculative or filed too late.  The panel explained that "courts considering dismissal of a dilatory § 1983 suit seeking injunctive relief should recognize the strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* at 1322 (citations and internal quotation marks omitted).[7]  The *Grayson* court found no error in the district court's finding that

---

[6]     Because the laches argument defeats the Complaint in its entirety, the Court will not reach defendants' other asserted grounds for relief.

[7]     Indeed, the Supreme Court has specifically recognized such a presumption.  *See Hill v. McDonough*, --- U.S. ----, 126 S.Ct. 2096, 2104 (2006) (adopting "strong equitable presumption" against granting stay in such circumstances); *Jones v. Allen*, 485 F.3d 635, 641 (11th Cir. 2007) ("We are mindful that the proper query in this case is whether Jones could have brought his claim at such a time as to allow consideration of the merits without requiring entry of a stay.") (citation omitted).

the plaintiff's delay in raising his § 1983 challenge to Alabama's lethal injection protocol was "unnecessary and inexcusable" because he "delayed filing his method-of-execution § 1983 suit until his execution was ... imminent." *Id.* at 1325. This conclusion was reinforced by Alabama's adoption of lethal injection as its primary method of execution several years before the plaintiff filed his § 1983 action, and the plaintiff's failure to file such an action "until he again faced the clear possibility that the Alabama Supreme Court would imminently set his execution date. ... If Grayson truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule." *Id.* at 1326. Finding little doubt that the plaintiff's real purpose in filing his § 1983 action was to delay his execution, and given the strong presumption against granting dilatory petitions for equitable relief, the *Grayson* panel found no abuse of the district court's discretion in dismissing the plaintiff's § 1983 action for unnecessary delay. *Id.*

Similarly, in *Williams v. Allen*, --- F.3d ----, 2007 WL 2368028 (11th Cir. Aug. 21, 2007), decided just two weeks ago, the Eleventh Circuit affirmed the dismissal of a § 1983 method-of-execution action based on unreasonable delay. The *Williams* plaintiff filed his lawsuit on April 10, 2007, six days after the State of Alabama asked the Alabama Supreme Court to set an execution date for him and two weeks after the U.S. Supreme Court denied his petition for writ of *certiorari* on his federal habeas claims. The district court dismissed the § 1983 action on the ground that the plaintiff had delayed unnecessarily. In affirming that determination, the *Williams* panel rejected the plaintiff's proffered excuses for the delay, emphasizing that when the plaintiff filed his *certiorari* petition, "it should have been clear to him that a denial of the petition would remove the final obstacle to lifting the state-court automatic stay of execution." *Id.* at *2. Further, *Williams* reasoned, "it should have been clear to Williams that once the Alabama Supreme Court lifted the stay, he might have as few as 30 days before the date of execution," *id.* Waiting to file suit in those circumstances was "unnecessary and inexcusable," where his § 1983 method-of-execution challenge could have been, but was not, filed in time to allow full adjudication of the merits without a need for a stay. *Id.* at *3. In light of these circumstances, the strong presumption against the grant of equitable relief, and the lack of any justification for the plaintiff's dilatory filing, the *Williams* panel affirmed the district court's judgment of

dismissal.

As noted, both *Grayson* and *Williams* involved the dismissal of § 1983 claims for injunctive relief based on dilatory filing. Significantly, however, the *Grayson* court explained that "the equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution challenges are equally applicable to requests for both stays and injunctive relief." *Grayson*, 491 F.3d at 1322; *see also Williams*, 2007 WL 2368028, at *2 (same). The Eleventh Circuit's finding that the relevant equitable principles apply with equal force whether a court is considering a request for injunctive relief or a request for a stay enables the Court to borrow from the body of § 1983 precedents concerning stays in analyzing defendants' Motion to Dismiss.

In this regard, also relevant is *Jones v. Allen*, 485 F.3d 635 (11th Cir. 2007), wherein the appellate court affirmed the denial of a stay for a death-row inmate who filed a dilatory § 1983 method-of-execution complaint. In contrast to *Grayson* and *Williams*, but in marked similarity to Hallford, the *Jones* plaintiff filed his § 1983 action while his petition for *certiorari* from the denial of federal habeas relief was still pending and several months before an execution date was set. Based on those circumstances, the plaintiff in *Jones* argued that he reasonably believed he would be able to litigate fully his § 1983 action without the need for a stay of execution. The Eleventh Circuit disagreed, and sharply criticized the plaintiff for waiting until several months after the appeals court had affirmed the denial of his § 2254 petition before filing his method-of-execution lawsuit. In particular, the *Jones* court opined that "waiting until a petition for *certiorari* has been pending for over three months, is simply too late to avoid the inevitable need for a stay of execution." *Id.* at 639 n.2. To support this conclusion, the court reasoned that because completion of collateral review eliminates the last possible obstacle to execution, the plaintiff "should have foreseen that the execution date would likely be set promptly upon completion of collateral review," and should have filed his § 1983 complaint in sufficient time to allow full adjudication without a need for a stay. *Id.* Of particular importance to the Eleventh Circuit's analysis was the passage of more than nine months between that court's denial of the plaintiff's federal habeas corpus petition and his filing of the § 1983 lawsuit. In fact, the *Jones* panel explained that, when the Eleventh Circuit affirmed the denial of the § 2254 petition, "given the extremely small chance of securing *certiorari* review in the Supreme Court, it was all

but guaranteed that Jones would die by lethal injection. Yet Jones has offered no reason at all for his decision to wait nearly ten additional months to file this suit." *Id.* at 640 n.2. In affirming the district court's refusal to grant a stay of execution, the *Jones* court noted that the plaintiff knew of the state's intention to execute him by lethal injection four years before he filed his § 1983 challenge, that the timing of that lawsuit left little doubt that its purpose was to delay his execution, that to allow the stay would be effectively to delay implementation of the plaintiff's death sentence for months or years, and that the plaintiff was or should have been aware of his potential challenge to the lethal injection protocol long before he filed suit.

### B.     *Application of* **Jones***,* **Grayson***, and* **Williams***.*

Clearly, "[i]njunctive relief is an equitable remedy that is not available as a matter of right." *Williams*, 2007 WL 2368028, at *2 (quoting *Grayson*, 491 F.3d at 1322). To determine whether the Court should invoke its equitable powers to dismiss this § 1983 action as having been filed too late in the day, one must look to whether Hallford unreasonably delayed in filing this lawsuit. *See Williams*, 2007 WL 2368028, at *2-5; *Grayson*, 491 F.3d at 1322-25; *Jones*, 485 F.3d at 638-40.

Under the circumstances presented here, the undersigned readily concludes that Hallford unreasonably delayed in filing his § 1983 challenge to Alabama's lethal injection protocol. It is undisputed that Hallford waited to bring this action until 20 years after his conviction and death sentence were handed down, 18 years after the conclusion of his direct appeal, nearly five years after the State of Alabama adopted lethal injection as its primary method of execution, two and a half years after the U.S. District Court for the Middle District of Alabama denied his federal habeas petition, seven months after the denial of his request for rehearing *en banc* before the Eleventh Circuit on his § 2254 action, and 11 days after the completion of briefing on his petition for writ of *certiorari* to the United States Supreme Court on his § 2254 petition. When the Eleventh Circuit denied him relief on his federal habeas claim, and when he contemplated seeking a writ of *certiorari* from the Supreme Court, "it should have been clear to [Hallford] that a denial of the petition would remove the final obstacle to lifting the state-court automatic stay of execution." *Williams*, 2007 WL 2368028, at *2. Indeed, by the time the Eleventh Circuit denied his § 2254 appeal and requests for rehearing in November 2006, "given the extremely small chance of securing *certiorari* review in the Supreme Court, it was all but guaranteed that

[Hallford] would die by lethal injection." *Jones*, 485 F.3d at 640 n.2. "As a matter of common sense, completion of collateral review eliminates the last possible obstacle to execution, and [Hallford] should have foreseen that the execution date would likely be set promptly upon completion of collateral review." *Id.* at 639 n.2. "Moreover, it should have been clear to [Hallford] that once the Alabama Supreme Court lifted the stay, he might have as few as 30 days before the date of execution." *Williams*, 2007 WL 2368028, at *2. Yet Hallford waited until June 2007 to initiate his § 1983 challenge to Alabama's lethal injection procedures.

Hallford offers two explanations in an attempt to excuse his dilatoriness, both of which have been categorically negated by binding precedents. First, Hallford contends that the timing of his § 1983 action was driven by ripeness concerns, as he "balanced the competing dangers of filing a claim that is unripe and a claim that it [*sic*] too ripe to do him any good." (Plaintiff's Brief (doc. 19), at 8.) The plaintiff in *Jones* proffered a similar argument that the timing of his complaint was driven by ripeness considerations; however, the court rejected it, reasoning that even under a plaintiff-friendly definition of ripeness, there was far more than a strong possibility that the plaintiff would be executed by lethal injection as of the time the Eleventh Circuit affirmed the denial of federal habeas relief, yet the plaintiff tarried for more than nine months beyond that point before initiating his § 1983 action. *See Jones*, 485 F.3d at 640 n.2. This action is closely analogous to *Jones*, inasmuch as Hallford waited until long after the Eleventh Circuit's affirmance of the denial of his § 2254 petition in August 2006 and its denial of rehearing or rehearing *en banc* in November 2006, before filing this § 1983 action in June 2007.[8] Plaintiff

---

[8] To date, the Eleventh Circuit has not delineated with specificity exactly when a method-of-execution challenge becomes ripe. Indeed, the *Jones* court neatly sidestepped the issue because even if the plaintiff's proffered standard – to wit, that such a claim only becomes ripe when there is a strong possibility that he actually faces execution by lethal injection – the plaintiff's filing was still dilatory. For the reasons set forth *supra*, that determination holds equally true with respect to Hallford. That said, the Court recognizes that the Sixth Circuit has expressly held that a method-of-execution claim accrues much earlier. *See Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007) (accrual date for Eighth Amendment challenge to lethal injection protocol occurs upon conclusion of direct review or, at the latest, when the state adopted lethal injection as its method of execution). It is unclear whether the Eleventh Circuit will ultimately follow *Cooey* or not; however, the Court need not and does not reach this question to dispose of Hallford's ripeness argument because his filing would be deemed dilatory even under a far more lenient standard than that adopted in *Cooey*.

has offered no justification of any kind for the seven-month delay from November 2006 through June 2007, which could have a profoundly deleterious effect on the parties' ability to litigate this matter to conclusion without the need for a stay of execution.

Second, Hallford contends that his delay in filing this action is excusable because he was simply awaiting a change in unfavorable precedent. On June 12, 2006, the Supreme Court decided *Hill v. McDonough*, --- U.S. ----, 126 S.Ct. 2096 (2006), which declared that method-of-execution suits such as Hallford's are properly brought pursuant to § 1983, rather than § 2254. *Hill* effected a significant change in the law of this Circuit. *See Rutherford v. McDonough*, 466 F.3d 970, 973 (11th Cir. 2006) (noting that pre-*Hill* circuit law required this type of challenge to be brought in a § 2254 proceeding and comply with restrictions on second or successive habeas petitions). Hallford suggests that for him to wait until *Hill* was decided rather than attempting a fruitless § 1983 challenge prior to *Hill* was simply "an exercise in prudent litigation strategy." (Plaintiff's brief (doc. 19), at 9.) The Eleventh Circuit has found otherwise. "Although our circuit precedent prior to *Hill* called for litigants raising method-of-execution challenges to bring them in second or successive habeas petitions instead of § 1983 actions, a death row inmate could have filed a § 1983 suit to challenge this precedent, as the death row plaintiff in *Hill* did in December 2005 in this same circuit." *Grayson*, 491 F.3d at 1323 (citations omitted). Simply put, "unfavorable circuit precedent does not foreclose all avenues for relief or excuse delay in raising § 1983 lethal injection claims." *Id.* The *Williams* court rejected a similar argument on the grounds that (a) the plaintiff could have filed a § 1983 method-of-execution lawsuit prior to *Hill*; (b) the plaintiff waited until 15 months after the Supreme Court had granted *certiorari* in *Hill* before filing his § 1983 action; and (c) the plaintiff waited until 10 months after the Supreme Court's ruling in *Hill* to file his own lawsuit. *Williams*, 2007 WL 2368028, at *2. Those same considerations are present here, and the Court expressly finds that Hallford "was not prohibited from filing his method-of-execution challenge prior to the *Hill* decision, and even if he were justified in waiting to file his challenge until the *Hill* decision, he unreasonably delayed his filing" after that decision was announced. *Williams*, 2007 WL 2368028, at *2.[9]

---

[9] Indeed, Hallford waited nearly a year after the *Hill* decision before filing his § 1983 action. Under the *Williams* rationale, this is unquestionably an unreasonable delay, and

Hallford's unreasonable delay is prejudicial because he has deliberately created a situation in which "a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule." *Grayson*, 491 F.3d at 1326.  The Eleventh Circuit has observed that "waiting until a petition for *certiorari* has been pending for over three months, is simply too late to avoid the inevitable need for a stay of execution." *Jones*, 485 F.3d at 639 n.2.  Yet that is precisely what Hallford did.  His petition for writ of *certiorari* (which he had filed and fully briefed before filing his Complaint herein) is almost certain to be ruled upon by the Supreme Court next month.  If the Supreme Court denies relief, which *Jones* opined is highly likely given the extremely small chance of securing *certiorari* review in the § 2254 context, "the State will file a motion that same day in the Alabama Supreme Court requesting that Hallford's execution be set." (Defendants' Reply (doc. 20), at 13.)  Although Hallford speculates that the earliest possible execution date would be April 2008, the Alabama Supreme Court could set that date for any time at least 30 days hence; therefore, it is certainly possible that Hallford could face an execution date in November or December 2007.  Even if Hallford's assumption of an April 2008 execution date were accepted as valid, it is not reasonable to believe that discovery could be conducted; dispositive motions could be filed, briefed, heard and ruled on; a trial on the merits could be concluded; and an appeal could be perfected and completed, all in advance of that April 2008 setting.[10]  *See generally Jones*, 485 F.3d at 639 n.2 (agreeing with district court that

---

plaintiff cannot credibly rely on *Hill* to justify the timing of this action.

[10]     This is so despite Hallford's representation that the nearly-concluded discovery in *McNair v. Allen*, a § 1983 method-of-execution action pending in the Middle District of Alabama, "will provide the State with all the evidence it needs to defend this action." (Plaintiff's Brief, at 6.)  While plaintiff would have the Court find that discovery in this action will be a non-event, he was not so sanguine when he recently petitioned first the Magistrate Judge and then this Court for authorization to conduct early discovery in advance of the Rule 26(f) conference. (*See* docs. 16, 21.)  The Court has no basis for concluding that discovery in this action and *McNair* would be co-extensive.  Indeed, there are simply too many unknown variables for the Court to be able to say with any degree of confidence that the parties' need for discovery in this case is non-existent given what has already transpired in *McNair*.  If this action were to proceed, this Court would not sacrifice the parties' rights to fair and orderly litigation by unreasonably accelerating the litigation timetable, all in the name of accommodating plaintiff's dilatory filing. Plaintiff could and should have foreseen the need to allow sufficient time for reasonable, fair administration of this lawsuit, and should have timed his filing accordingly.  He failed to do so,

adjudicating § 1983 method-of-execution claim in trial court would take much longer than three months, and that an ensuing appeal would add months or years to the litigation); *Williams*, 2007 WL 2368028, at *4 ("if Williams were allowed to proceed on his § 1983 challenge in district court, the implementation of the State's judgment would be delayed by many months, if not years").[11]

For all of these reasons, the Court finds that Hallford has unreasonably delayed in bringing this § 1983 action, and that a consequence of his unreasonable delay is that a final decision on the merits is not reasonably possible without entry of a stay of execution and/or an expedited litigation schedule. These circumstances trigger the "strong equitable presumption" against the grant of injunctive relief. *Grayson*, 491 F.3d at 1322. Plaintiff having made no showing to rebut that presumption, dismissal is appropriate. *See Williams*, 2007 WL 2368028, at *4 (district court properly dismissed plaintiff's § 1983 action "due to his unnecessary delay, especially given the strong presumption against the grant of equitable relief"); *Grayson*, 491 F.3d at 1326 ("Grayson's unnecessary delay was a proper ground to dismiss his present § 1983 action"). By waiting until June 2007 to file his challenge to Alabama's lethal injection protocols, despite knowing since no later than July 2002 that defendants intended to execute him by lethal injection and despite knowing since November 2006 that his execution by lethal injection was all but guaranteed, Hallford "leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." *Jones*, 485 F.3d at 640 (citation omitted). This is improper, particularly

---

without justification.

[11]   Of course, if the Supreme Court were to grant *certiorari* next month, Hallford's federal habeas claims would extend for at least several more months before the Supreme Court. That development could allow sufficient time to litigate this § 1983 action to conclusion without the need for a stay. The Court finds, however, that the strong equitable presumption should be applied with an eye toward what is reasonably likely, rather than indulging in speculative, fortuitous probabilities whose occurrence is highly remote. To hold otherwise would be to grant a dilatory § 1983 plaintiff a windfall by allowing that dilatory action to proceed if there is any possibility that the Supreme Court may grant *certiorari* in the § 2254 action. This would result in equally dilatory § 1983 method-of-execution actions being treated differently based on how the Supreme Court handled the plaintiffs' underlying federal habeas petitions. The Court is unaware of any precedent, binding or otherwise, that has recognized such a distinction.

given the recognized interests of both the State and the victim's family in the timely implementation of the death sentence handed down some two decades ago. *See Williams*, 2007 WL 2368028, at *4 (noting "strong interest" of State and victim's family in timely enforcement of sentence); *Grayson*, 491 F.3d at 1326 (similar); *Jones*, 485 F.3d at 641 (similar).

### III.   Conclusion.

For all of the foregoing reasons, Defendants' Motion to Dismiss (doc. 15) is **granted** and this action is **dismissed**.  A separate judgment will enter.

DONE and ORDERED this 6th day of September, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE